May it please the Court, my name is Stacey Tolchin, and I represent Petitioner Juan Jaime Franco today. I would like to reserve two minutes of my time for rebuttal. Keep your eye on the clock. We'll try to help you, but it goes down the clock. A Notice to Appear, or an NTA, must be received before a non-citizen may be ordered deported in absentia because he failed to attend his removal hearing. An NTA informs him of his obligation of updating his change of address with the Court and of the consequences of failing to appear before Court in that he can be ordered deported. The statute at 8 U.S.C. 1229 A1F lays this out clearly. This is what we call a 1229 A1F address. If clear, convincing, and unequivocal evidence does not establish that proper notice was provided, then an in absentia order is unlawful. What's the, what is a standard of review, or what's the burden in this context when you're seeking to reopen? Normally, a motion to reopen is reviewed for an abuse of discretion, but this is a de novo issue as far as notice. There is review of the factual issues for substantial. Who carries the burden on proving whether or not there was notice here? At this, not in the hearing, the absentia removal, where the statute places clear and convincing standard, imposes that on the government. But in this context, when you're seeking to reopen. I think under Chaitis, Your Honor, the Ninth Circuit case, it still is on the government to prove that notice was proper. Chaitis is at 486, Fed Third, 1079. And so if the Respondent or the Petitioner here alleges that there was not proper notice and provides a good faith basis for that or a prima facie case, then I think it's up to the government then to show that the notice was proper under the statute. Well, but the notice, as I understand it, was sent to the address that was on the asylum application. That is correct, Your Honor. So what was the government supposed to do? So in a case like this, this is matter of GYR, the Boards on Bont case, where the, I think it was also an asylum application. The notice to appear, NTA, was sent to the address on the asylum application and then it came back in that case, right? So this typically happens, this happens frequently in immigration court. And if a judge determines that there's not proper notice, which the judge should have here, because the certified mail receipt for the name of the person who's the recipient, it's blank, right? Well, but it didn't come back. The receipt came back. The receipt came back, but the recipient is blank and then the signature is illegible. And so an immigration judge should have looked at that and said, well, I don't see that there's clear convincing and unequivocal evidence that the respondent in this case was properly served for purposes of the statute. There's a Seventh Circuit case that's very similar to this called Arellamon and that is for the Court 383. Well, then, let me just follow up for just a second. So then what should they have done? Served it again? I mean, they had the, what address were they supposed to use? They use the address that's provided if it's not properly served, then the case is revoked. If he comes back to the service's attention for any reasons, all they do is move to recalendar the case. And that's done in practice. This issue of the notary, it happens all the time, as you know, especially in California. Yeah, all the time. Yeah. And it was raised to the Court in the Andea case. It wasn't ultimately decided. But no court has ever held that service of the NTA or the prior document, the order to show cause on a notary is proper service under the statute. Let me be sure. Are you certain this was a notario? Well, we only have. I thought it was a lawyer. He thought it was a lawyer. I understand that. Yeah. But I thought that the application for asylum reflected a lawyer's name. Is that incorrect? It's incorrect, Your Honor. In fact, there's no, there's a part on the application where you say who filled out the application. That's blank. And then, of course, a lawyer has to submit a special form called a Form G-28 that we present our appearance. Legally we're required to do that. And, of course, that was never done. Let me ask you this. I get and understand your point about the NTA aspect of this. But moving back to the reopening concept, we're supposed to credit what your client has presently submitted in terms of what happened. He says it never intended to file an application for asylum, never had anything to do with it. Why would anybody send one in if you didn't contact him? It's inherently unbelievable, isn't it? No, Your Honor. It's so common. If you look at the NDA case. No, I understand. I understand your point about the Notario point. But my concern is why would a Notario send in an asylum application unless he was getting paid for it? Somebody came and asked him to do it. He doesn't just say, you know, I think I'm going to send in an application for Mr. Franco, who I don't know. Right. Why would he do that? Because he's getting the Mr. Franco hired him to file a work permit. He doesn't know. Okay. So Mr. Franco hired him. Okay. And you're saying he thought it was for a work permit? Correct. Right. And so this is a common practice among notaries. It's detailed in the Lopez case and NDA. This happens still today. And so people think they're hiring somebody for a work permit. The asylum application gets filed. They don't know about it. They're sent to the asylum interview. He doesn't know about it. And then it goes automatically to the immigration court and people get ordered deported. Okay. So let's take that as all being true, as we're supposed to do in a reopening situation. What are we supposed to do with the concept that it was supposedly a work permit? At least there's an address, right? But you're saying that the work permit would go to the Department of Labor, so it's a different issue. Is that what we're saying or what? The work permit goes to immigration. Right. Right. So I think your point is the address that he provided, he still provided. Right. Right. So the notary provided the address because he signed the application. Right. That was blank. And so the issue is, the issue really is, is service here on the notary sufficient for the NTA? And I think there's two issues. One is that the certified mail receipt is illegible on the signature and there's no name. And so in order to show that, meet that high burden, we have to have an identity of the person who signed for the certified mail receipt. Is there some case law? I mean, nobody can read my signature either. I don't know about yours. The longer I use a computer, the less legible it is. So does that mean I can't be served by a certified mail? Well, no, Your Honor, but you would write down what your name is. There's a place on the form. Well, and the USPS is supposed to do that by certified mail, and that wasn't done here. But this exact sort of situation happened in the Seventh Circuit case at AMO where the signature was illegible. And the court in the Seventh Circuit said that that was, again, not enough to meet this high burden of proof because we don't know who signed for the document. So I think there's two issues. One is the illegible signature and the lack of identity. But the other issue, I think, is, is service on the notary ever enough for service of the notice to appear under the statute? And I'd like to direct the court to a decision in Hernandez, which is 524 Fed 3rd 1014. There's a real discussion about notaries and how they're different than attorneys and, in fact, the harm that notaries cause to communities. And I think that's a really important thing here because we know how much fraud happens, especially in California. Well, I'm trying to understand this from the standpoint of the agency. They send it to the person, to the address that's on the application. It comes back with a signature that can't be read. And they're supposed to say this was not properly served because they couldn't read the signature? Yes. Not because it was sent to the wrong address and not because it never got there. That's correct, Your Honor. Because they couldn't read the signature? Because that's what a matter of GYR says. We have to have actual or constructive notice. And, again, if you look at AMO, that's what the court says. Well, that's from the standpoint of the petitioner. But you're saying that just on the basis of not being able to read the signature, that the agency should have been administrative. Not being able to read the signature and having the portion left blank of who the recipient is, where you're supposed to write in script, that's legible, who the person is. And you say the matter of GYR says that that's not adequate service and that's it? GYR says it's not. And then if you look at Chidas from this court and then Adeyemo. Nice. Did the agency have the option, I noticed on the certified mail, you can restrict the address, have a restricted delivery, which, as I understand it, that requires the addressee to sign for it. Is that right? Do you know? Yes, Your Honor. Well, I did look this up. The post office has a special form where you can designate an agent of who can receive proper service. It's the form 3801. And so if, for instance, I wanted another person to be able to receive service legally, I could just fill out this form and then it would be sufficient for purposes of certified mail. But obviously that wasn't done and that's typically not done in the case of a notary. But that's something they could do to give a special assurance or additional assurance of actual delivery by restricting? Absolutely. So if the individual can be served through another person that's not him, then this form can be filled out. But that obviously was not the case here. But that would limit who could sign that form. Absolutely. Who could sign the receipt. Right. And so you can put your family members on there or any other person at your office, for instance, who you'd want to get receipt. And your time is up. We've asked you some questions. We may give you a little extra time to rebuttal. But let's hear from the government now. Okay. Thank you, Your Honor. Good morning. Good morning, Your Honors. May it please the Court. Michael Heiss on behalf of the Respondent, the Attorney General of the United States. The agency properly exercised its discretion here to deny this motion to reopen. And the question before the Court is why believe this petitioner? He is asking the Court to accept that he did not receive a notice to appear in the form of a receipt. But it was mailed to an office address. That's undisputed. An office address that the petitioner provided. And that's the key to this case. His motion to reopen filed before the immigration judge. He claimed in that motion that he didn't sign the. Aren't we concerned with the actual? I know there's actual and constructive notice. But aren't we concerned what's the evidence of actual notice here, given the fact that it doesn't appear to be, it didn't even purport to be his signature on the receipt and it's delivered to an office address? It's not where he lives. We need to take a step back from that point. The statute only requires the government to, or service of the notice to appear by mail is sufficient if there's proof of delivery sent to the last known address provided by the alien. That's 8 U.S.C. 1229 C. And that is exactly what we have here. Does that statute deal, though, with the notice to appear? Isn't there a peculiar requirement about notice under an NTA? That's exactly what an NTA is. This is. No, I understand. But what you're, what, what the government claims is that 20 years before he filed an asylum application, which of course is very different. Right. My question to you is, is the statute that you cited relevant with respect to the address provided in connection with the asylum application? Absolutely. Because that's the last address that the alien provided. So it doesn't matter what the address is. If they write, they write to the service and say, you know, I'd like to talk to some people. I'm doing a project. Please let me know if someone will talk to me. If that address is there, you can use that. Is that what you're saying? It's whatever address the alien provides. And that's, that's actually an apt question here, because what would stop an alien from providing a false address to then get away with this for 20 years to be able to. You're talking about the last known address in accordance with subsection A of A1F, right? That presumes that a notice to appear has already been given. That statute specifically talks about mailing the notice to appear. 8 U.S.C. 1229 C specifically provides that service of a notice to appear by mail is sufficient if there's proof of delivery to the last known address provided by the alien. I thought it says in accordance with subsection, maybe I'm looking at a different section. Right. It's cross-referencing to the address provided. And A1F presumes there's already a notice to appear, which tells the alien what they need to do. Which is what I was referring to earlier. Isn't that section a reference to an address given in connection with an NTA? It's a question of which comes first. Ultimately what Judge Schroeder was, right, but what Judge Schroeder was asking is what is the agency supposed to do? Where are they supposed to send this? Well, one thing they're supposed to do is make sure there's clear and convincing evidence before you deport somebody that actual notice was given. And the argument here is that by sending it to an address and getting an illegible signature back perhaps doesn't satisfy that burden. If there's a problem with how the statute is written, that's something for Congress to address or for this Court to suggest that Congress needs to impose on the agency a higher burden in terms of obtaining this kind of notice. But what's required is under 8 U.S.C. 1229C is service by mail, not certified mail, regular mail. And there's a rebuttable presumption of proper service that is discussed in MRA. But the name of the person who received it was not there, and the signature was illegible. That's evidence that he can submit. He can discuss that evidence when attempting to rebut this presumption of service. And he's done that. He's attempted to rebut this presumption. What he runs into is the fact that he waited 16 years to do anything about it. He had constructive or actual notice of something being wrong with his case at worst in 1998 when he was physically removed from the United States. Do you agree that in a motion to reopen that we must credit the statement of the petitioner unless it's inherently unbelievable? Do you agree that's what the case law requires? Yes. He's entitled to. So in this case, we're supposed to credit what he said. He said, hey, I never did this. I never sent this in. This is not my lawyer, not my address. So we credit that unless it's inherently unbelievable. If it's inherently unbelievable, what's the standard of that? And if we determined that his story is inherently unbelievable, what do we do with this case? If the court determines that his story is inherently unbelievable, it denies the petition for review. And that's entirely my initial point was why should this court believe this petitioner because he provided this address. He's claiming now that he signed the application. He says he didn't. That's the point. But he did. In his reply brief, pages 14 and 15, he says he now concedes that he signed this asylum application. He claims he didn't know what he signed, but he still provided this address. And as Judge Schroeder said, what else is the agency supposed to do here? What more are they supposed to do? The statute doesn't require personally walking up to the individual and saying, are you this person? Yes, I am. Here's the notice to appear. You need to appear in this state. That's not what the statute requires. So the GYR, you distinguish that how? GYR, there's no dispute there that the NTA was never delivered. Never delivered. And we have subsequently MRA and actually a matter of MD that talks about who is eligible for the mail is irrelevant. And actually, besides that, certified mail still isn't required. The government does not have to provide certified mail. But let's go back to first, what is inherently unbelievable? I mean, that's the question that Judge Smith asked. The fact that it's tough for the INS to do something more, that's a different question. The question is, what's inherently unbelievable such that we would not credit his testimony as we would normally be required to do? The immigration judge discussed all of these factors. First, he provided false documents in an attempt to enter the United States, made a false claim to citizenship, provided a false name, illegally entered the country three times. And as specifically critical here, his most ---- So anybody that illegally enters and they submit an affidavit is thereafter inherently unbelievable? I mean, that may go to his credibility and that may be considered whenever it gets to the merits. But why does it make this inherently unbelievable? That means within the four corners, I would think. Or something about this, just because he's violated the law in the past, what makes this inherently unbelievable? Whether or not to credit his statement is a question of fact for the immigration judge. And what the immigration judge is faced with here is considering all of the MRA factors that are listed out, one of which includes any prior applications individually filed. But isn't there a difference between judgment made by the immigration judge after an evidentiary hearing and listening to the petitioner as opposed to one which is simply an affidavit seeking to reopen, which is the initial stage just to get to first base? Well, there's no requirement that the alien receive a hearing. The judge is on the motion to reopen entitled to review the evidence. No, but credibility determinations are generally deferred to when there has been a hearing. Sure. And so Judge Chen's argument is where there hasn't been or question is where there hasn't been a hearing. Right. How can you say that it's inherently unbelievable? It's inherently unbelievable in that he has now conceded to have lying. He lied in his motion to reopen. In his motion to reopen, he stated that the signature on the asylum application was forged. And now he's conceding that he actually did sign that. That's a pretty momentous shift. He provided the address, and that's critical to the statute as well. It's this address provided by the alien. Last known address, quote, provided by the alien. An application that he signed with an address on it, even if it's wrong, he provided that address. And as Your Honor asked, what more is the agency supposed to do in that regard? Does the Yang versus Lynch case bear on this at all, the fact that he lied and now he admits that he was inaccurate with respect to one aspect? Does that taint the whole thing? I had to check my Latin on what the number for four is, is quator. That's in falsus uno. This is in falsus quator. That's asking too much. Falsus uno, no, this court has held that the board, in the context of a motion reopened, can't apply the falsus uno doctrine. This is going beyond that. This is asking the agency and this court to accept that he received, did not receive, a notice to appear that was mailed to an address he provided sent by certified mail, not regular mail, regular mail is permissible under the statute. Has he acknowledged that he gave the address or that that was the address that was on the asylum application? He does not dispute, I mean, it's indisputable that the address to which he was. Was the address on there? Yes. Yeah, there's no question there. And now he has conceded that that's his signature. He signed that document. Presumably the notario prevent, he says, we have no reason to dispute it, and we see this all the time. Sure. That sent it in as an asylum application and got him into the whole system. That all being the case, the question then becomes, okay, you know something went wrong. And that's where diligence comes in. In 1998, he was ordered removed, was physically removed in 1998, came back illegally, does nothing for at best five years, consults, quote, a paralegal after having talked to lawyers about his case or maybe a notario or somebody. He does nothing about his case for five years. They don't help him. He waits another nine years after that until 2012, but doesn't file the motion to reopen until 2014. A matter of MRA discusses how, okay, you have an opportunity to rebut this presumption of notice, and one of the factors to be considered as to whether or not you rebutted that notice is whether or not you acted diligently upon learning that there's a problem with your case. How does that square with the statute that says when it comes to actual notice, such a motion can be made at any time? It does. Yes. But it also says that granting that motion is discretionary. It says an in absentia removal order may be rescinded, not must. And you can certainly file something at any time, but whether or not you've rebutted your presumption of notice, which in this case the immigration judge did him a favor, in essence, by discussing the regular mail presumption, which is a lower presumption, despite the fact that the notice here was mailed by certified mail, again, to an address that he provided on a form he now concedes he signed. Okay. Any other questions by my colleagues? Thank you. Thank you, Your Honor. You're over time. We'll give you a minute to rebut. Okay? Okay. Just very briefly. I think that the Respondent fails to look properly at matter of Grijalva, which is 21 INN Decision 27. Grijalva makes the distinction between the charging document there, the order to show cause, which is the predecessor to the NTA, and the hearing notice. Different rules apply, as the Court has acknowledged. I also want to further address the notice. I understand that. So you're saying that the notice requirement for what is now the NTA is different than it would have been in connection with an address given in connection with an asylum application. Is that correct? No. It's not correct. The NTA obligations are different than the hearing notice. Oh, right, right. And that's also addressed, again, in Chidas. Chidas is really on point in this case. The Court's decision in Andea discusses this issue. If there's no notice, a motion to reopen can be filed at any time, and there is no due diligence requirement. And we've submitted a 28J letter that does show that Andea has been applied by the Board after the matter of MRA, which was all raised in the 28J. Okay. Your time is up. Good? Okay. Thank you so much. Unless either of my colleagues has additional questions. Great. Thank you. Thank you both for your spirited argument. We appreciate it. The case just argued is submitted.
judges: Schroeder, M. Smith, Chen